UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN MARIE CALMA,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:25-cv-01899-KES-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY BE AFFIRMED<br><br>(ECF Nos. 1, 13).<br><br>FOURTEEN (14) DAY DEADLINE |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for disability insurance and supplemental security income benefits. *See* 28 U.S.C. § 636(b)(1)(B) (providing for issuance of proposed findings of fact and recommendations); Local Rule 302(c)(15) (referring final social security decisions for findings and recommendations).

Plaintiff presents the following issues for decision:

1. Whether the ALJ properly developed the record.

2. Whether the ALJ properly considered Plaintiff's substance abuse in accordance with agency policy.

3. Whether the RFC finding was supported by substantial evidence.

4. Whether the ALJ articulated clear, convincing and well-supported reasons for discounting Plaintiff's symptom testimony.

(ECF No. 13, p. 9) (minor alterations).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court recommends as follows.

## I.   ANALYSIS

### A.   Duty to Develop the Record

Plaintiff argues that the ALJ failed to fully develop the record. (ECF No. 13, p. 9). Specifically, she contends that the record "contained very little evidence dated prior to 2022, despite Plaintiff's reports of eight or nine involuntary psychiatric hospitalizations during the period from 2012 through 2022" and "the ALJ not only failed to obtain these records, [but] she then relied upon the absence of this evidence to support her conclusion of non-disability." (*Id.* at 9, 10).

Defendant argues that the ALJ adequately developed the record, noting that Plaintiff was represented by an attorney at the hearing, who stated that some records were outstanding, and the ALJ left the record open for thirty days for Plaintiff to obtain the records. (ECF No. 15, p. 8). Further, "[a]dditional records were obtained the day after the hearing, but Plaintiff still had difficulty obtaining records (AR 397-403)," and "[f]our months after the hearing, the ALJ obtained additional record from Scripps and Clinica Sierra Vista (AR 408)." (*Id.*). Finally, "[t]he ALJ attempted to obtain records from Pathways Center, but the ALJ's requests were returned as undeliverable (AR 405-06, 408)." (*Id.*). Defendant argues that such steps satisfied the ALJ's duty to develop the record and it is ultimately "Plaintiff who has the burden of establishing disability, and she failed to do so." (*Id.* at 9).

In her reply, Plaintiff does not contest Defendant's version of events but argues that the ALJ erred "in failing to subpoena the missing records," which error "was compounded by the fact that [the ALJ] used the missing records as a basis to challenge the credibility of Plaintiff's mental allegations." (ECF No. 16, p. 3).

An ALJ has a duty to develop the record for represented and unrepresented claimants, with the duty being "heightened where the claimant may be mentally ill and thus unable to protect

her own interests." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Although the ALJ must properly develop the record, a claimant has the burden of proving that she is disabled. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("The claimant carries the initial burden of proving a disability in steps one through four of the analysis.").

After considering the parties' arguments and applicable legal standards, the Court will finding that the ALJ did not err by failing to develop the record.

As an initial matter, while Plaintiff describes the missing records as concerning "eight or nine involuntary psychiatric hospitalizations during the period from 2012 through 2022," some of the information about these visits was in fact in the record and the ALJ referred to them in the opinion. (*Id.* at 10, noting that "[t]he treatment records also reflect her reports to other providers of other suicide attempts and multiple psychiatric hospitalizations in her past"); (A.R. 36, 37) ("In 2012, she was not aware that she had mental illness, and thereafter, she had episodes of involuntary psychiatric hospital admissions." "In April 2022, the claimant was admitted to the hospital on a voluntary basis due to suicidal ideation . . . .").

Moreover, as Defendant notes, the ALJ made reasonable efforts to obtain outstanding records for Plaintiff. (ECF No. 15, p. 8). At the hearing, the following exchange took place between the ALJ and Plaintiff's attorney:

> ATTY: But I think we're still looking for the Clinica Sierra Vista from Carrie Woods and Scripps and Pathways, but that's in Georgia, so I'm not sure. It might be difficult.
>
> ALJ: How much time would you like to get in the Clinica Sierra Vista, the Scripps, and the Pathways records?
>
> ATTY: If we could have 30 days, Your Honor, just so Jean can maybe help us out calling the Georgia, because I know that's – those are older records, but --
>
> ALJ: Sure, I'll hold the record open for 30 days.
>
> ATTY: Thank you.

(A.R. 50).

The ALJ ultimately obtained the Scripps and Clinica Sierra Vista records before the decision was issued. (A.R. 40, 49, 408; *see* Exhibits 14F-16F to A.R.). However, the Pathways records requests were returned as undeliverable. (A.R. 405-06, 408). Presumably referring to the Pathways records, Plaintiff faults the ALJ for "failing to subpoena the missing records." (ECF No. 16, p. 3). However, it appears that a subpoena would not have helped obtain the records when the initial request was returned as undeliverable. (A.R. 405).

The Court finds that the ALJ acted reasonably by trying to obtain the records and also leaving the record open for Plaintiff's counsel to obtain them. *See Alexander v. O'Malley*, No. 23-55213, 2024 WL 612877, at *2 (9th Cir. Feb. 14, 2024) (unpublished) ("Moreover, the ALJ made multiple attempts to obtain records from Dr. Po's clinic, which were unsuccessful because the facility, which had closed, did not respond to faxes, and mailed requests were returned as undeliverable. . . . [T]he ALJ took reasonable steps to obtain information from Dr. Po's clinic.") (internal citation omitted); *Conner v. Colvin*, 674 F. App'x 629, 630 (9th Cir. 2017) (unpublished) ("The ALJ also left the record open for thirty days post-hearing to allow Conner an opportunity to supplement the record. Accordingly, Conner's contention that the administrative record was incomplete lacks merit.").

For the reasons given above, the Court recommends finding that the ALJ did not fail to adequately develop the record.

**B.      SSR 13-2p**

Plaintiff argues that the ALJ erred by failing to properly consider Plaintiff's substance abuse under Social Security Ruling (SSR) 13-2p, which provides a framework to follow to assess whether substance abuse is a material contributing factor to disability. (ECF No. 13, p. 11).

Defendant argues that, under the correct analysis provided by SSR 13-2p, materiality is not determined if the claimant is not disabled, and because the ALJ determined that Plaintiff was not disabled, "the ALJ was not required to make a materiality determination." (ECF No. 15, p. 9).

Plaintiff's reply maintains that the ALJ failed to properly apply SSR 13-2p. (ECF No. 16, p. 3).

Under 42 U.S.C. § 423(d)(2)(C), "[a]n individual shall not be considered to be disabled . .

. if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." Where evidence of drug addiction and alcoholism (referred to as DAA) is present, an ALJ must conduct additional analysis to determine whether the DAA is a "contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a). "If the remaining limitations would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied." *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

SSR 13-2p provides an overview of "the DAA Evaluation Process":

1. Does the claimant have DAA?

    a. No—No DAA materiality determination necessary.

    b. Yes—Go to step 2.

**2. Is the claimant disabled considering all impairments, including DAA?**

    **a. No—Do not determine DAA materiality. (Denial.)**

    b. Yes—Go to step 3.

3. Is DAA the only impairment?

    a. Yes—DAA material. (Denial.)

    b. No—Go to step 4.

4. Is the other impairment(s) disabling by itself while the claimant is dependent upon or abusing drugs or alcohol?

    a. No—DAA material. (Denial.)

    b. Yes—Go to step 5.

5. Does the DAA cause or affect the claimant's medically determinable impairment(s)?

    a. No—DAA not material. (Allowance.)

    b. Yes, but the other impairment(s) is irreversible or could not improve to the point of nondisability—DAA not material. (Allowance.)

    c. Yes, and DAA could be material—Go to step 6.

6. Would the other impairment(s) improve to the point of nondisability in the absence of DAA?

    a. Yes—DAA material. (Denial.)

    b. No—DAA not material (Allowance.)

5

Soc. Sec. Ruling, SSR 13-2p.; Titles II & XVI: Evaluating Cases Involving Drug Addiction & Alcoholism (DAA), SSR 13-2p (S.S.A. Feb. 20, 2013), *available at* 2013 WL 621536 (emphasis added).

After considering the parties' arguments and applicable legal standards, the Court will recommend rejecting Plaintiff's argument that the ALJ erred by failing to properly follow SSR 13-2p.

As an initial matter, "SSRs do not have the force of law," although, "because they represent the Commissioner's interpretation of the agency's regulations, [courts] give them some deference." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001).

Moreover, as can be seen from the overview of the DAA evaluation process, the ALJ is not required to evaluate the materiality of a DAA if it finds that the Plaintiff is not disabled. Here, the ALJ found Plaintiff to be not disabled after considering all her impairments, including her DAA.  Thus, even following the guidance of the SSR, the ALJ was not required to evaluate the materiality of Plaintiff's DAA. *See Martin v. Berryhill*, No. CV 16-2630, 2018 WL 1079613, at *5 (E.D. Pa. Jan. 26, 2018), *report and recommendation adopted*, No. CV 16-2630, 2018 WL 1071880 (E.D. Pa. Feb. 27, 2018) ("As is clear from the text of the ruling, the adjudicator does not analyze whether a Substance Use Disorder is material to a claimant's disability unless and until he determines that the claimant is disabled by her various impairments. Here the ALJ made a finding that Plaintiff was not disabled. In light of this negative finding, SSR 13-2p recognizes that the ALJ is not to determine DAA materiality and that the decision must be a denial.") (internal citation to record omitted).

For the reasons given above, the Court recommends finding that the ALJ did not err by failing to properly consider Plaintiff's substance abuse under SSR 13-2p.

**C.    RFC**

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ rejected all the medical opinions "and thus crafted an RFC assessment that was not informed by any medical opinion." (ECF No. 13, p. 14).

Defendant argues that "[t]he ALJ reconciled [medical] opinion with other evidence

6

including Plaintiff's subjective statements, the largely unremarkable clinical findings, effective treatment, and Plaintiff's activities to [properly] find that Plaintiff could perform work that does not involve complex and detailed tasks, and is limited to involving simple instructions with no more than occasional interaction with the general public." (ECF No. 15, p. 7).

Plaintiff's reply maintains that "that the RFC finding was not supported by substantial evidence because the ALJ served as her own medical expert." (ECF No. 16, p. 6).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted). In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).

After considering the parties' arguments and applicable legal standards, the Court will recommend rejecting Plaintiff's argument that the RFC was not supported by substantial evidence.

As an initial matter, "ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir 2022)). However, the Ninth Circuit has also found that an ALJ may not draw his or her own conclusions about medical evidence not subject to lay interpretation without the assistance of a medical record. *See Rondan v. Halter*, 8 Fed. App'x. 724, 725 (9th Cir. 2001) (unpublished) ("Instead of requesting a supplemental medical opinion that included consideration of the MRIs,

the ALJ drew his own conclusions about the MRIs. The lack of a medical opinion that included consideration of the MRIs, and the fact that the RFC determination was made without consideration of Rondan's medical records, triggered the ALJ's duty to further develop the record.").

Here, the ALJ properly relied, in part, upon medical clinical findings from a consultative psychological evaluation in determining the RFC. (ECF No. 13, p. 15).

> In January 2023, Gil Schmidt, Psy.D., performed a consultative psychological evaluation and noted the claimant complained of borderline personality disorder, bipolar disorder, depression and PTSD. Upon examination, the claimant had normal mood with appropriate sense of humor, appropriate eye contact, normal gait, organized thoughts, normal thought content, intact memory, and normal attention/concentration. The claimant was able to perform simple daily money calculations and she responded appropriately to conversational bantering. Dr. Schmidt had the diagnoses of no acute psychiatric disorder, alcohol misuse in remission, cannabis misuse in remission and methamphetamine misuse in remission. Dr. Schmidt opined the claimant has no limitation in her ability to perform work-related mental activities. (Exhibit 9F)
>
> *While clinical findings identified by Dr. Schmidt support the residual functional capacity*, the undersigned finds the opinion of Dr. Schmidt less persuasive because mental health treatment notes and clinical findings, as discussed, establish severe mental health impairments.

(A.R. 38) (emphasis added).   Accordingly, the ALJ provided *more restrictive* limitations in the RFC than Dr. Schmidt opined. To the extent that Plaintiff argues that the ALJ failed to explain these additional restrictions in the RFC, "such additional restrictions only benefitted plaintiff, making any error in that regard harmless." *Herrera v. Colvin*, No. ED CV 13-1734-SP, 2014 WL 3572227, at *6 (C.D. Cal. July 21, 2014).

Besides Dr. Schmidt's clinical findings, the RFC was properly based on Plaintiff's subjective testimony, her treatment history, and the lack of supporting objective evidence. As for the medical evidence, the ALJ did not interpret raw data (*e.g.*, MRIs) but instead relied on examination findings subject to lay interpretation, including the following discussion:

> While the claimant had intermittent findings of depressive thoughts, depressed mood, ruminations, tearfulness, constricted affect, worried mood, rapid or pressured speech and restlessness, her overall, general clinical findings support the residual functional capacity, including unremarkable motor activity, good eye contact, cooperative attitude, unremarkable behavior, normal mood, logical, goal-

directed thought process, unremarkable thought content, normal concentration, average intelligence, intact memory and normal attention. (Exhibit 5F/8-63, 6F/21-55, 10F/4, 19, 11F/15-41, 77-117, 26-33, 12F/6, 10, 40-52, 13F/112-159, 15F, 16F)[.]

(A.R. 37).  *See Jackson v. O'Malley*, No. 1:23-CV-00733-GSA, 2024 WL 2302113, at \*5 (E.D. Cal. May 21, 2024) ("Importantly, Plaintiff highlights no cases suggesting that a therapist's progress notes or a physician's mental status examination findings concerning issues such as appearance, eye contact, mood, memory, and judgment, as the ALJ reviewed here, constitute 'raw medical data' beyond a layperson's comprehension.").

For the reasons given above, the Court recommends finding that the RFC that was supported by substantial evidence.

### D.   Subjective Testimony

Plaintiff argues that the ALJ failed to offer specific, clear and convincing reasons to reject her subjective complaints. (ECF No. 13, p. 16). Defendant argues that the ALJ's reasoning was sufficient to discount Plaintiff's subjective complaints. (ECF No. 15, pp. 4–6). Plaintiff's reply maintains her argument that the ALJ's reasoning was insufficient. (ECF No. 16, pp. 3–5).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

However, "[t]he standard isn't whether [the] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.

9

1995); *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Accordingly, our next task is to determine whether the ALJ's adverse credibility finding of Carmickle's testimony is supported by substantial evidence under the clear-and-convincing standard.").

After considering the parties' arguments and applicable legal standards, the Court will recommend rejecting Plaintiff's argument that the ALJ improperly discounted her subjective testimony.

Here, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 36). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

Here, the ALJ summarized Plaintiff's subjective complaints and reasons for discounting them as follows:

> During the hearing, the claimant's testimony included the following: She had had a history of depression, homelessness, incarceration, rehabilitation and mental health treatment. In 2012, she was not aware that she had mental illness, and thereafter, she had episodes of involuntary psychiatric hospital admissions. In 2022, she got a job at a sober living facility, but she was ineligible to continue performing that job due to her background. In 2023, her depression worsened and she lost her job as a line cook. Her side effects from medications include tremors, grogginess, drowsiness, sleep disturbance and difficulty finding words. She isolates more and does not like crowds. She does not take public transportation, and her friend needs to take her shopping. She leaves the store if it gets too crowded or if she is trapped waiting in line.
>
> . . . .
>
> Several factors indicate that the claimant's statements concerning the intensity, persistence and limiting effects of her reported symptoms and limitations are not entirely consistent with the medical evidence. The record contains limited treatment notes corresponding to the alleged onset date and lacks follow up treatment notes until December 2021. The record lacks longitudinal individual psychotherapy treatment notes, despite recommendations for individual therapy. Clinical findings, including 5/5 motor strength, normal gait, full range of motion, normal mood and affect, normal behavior, cooperative attitude, intact memory and attentive concentration, support the residual functional capacity. (Exhibit 10F-13F,

> 15F, 16F) Treatment notes do not corroborate the claimant's reported side effects from medications, and no side effects were noted. (Exhibit 5F/20-61, 6F/8-54, 10F/3, 49, 79, 93) The claimant reported she intentionally spends much of the day indoors engaging in activities such as cooking, watching television, listening to the radio and performing domestic chores. (Exhibit 9F/6) The claimant reported psychiatric medications were beneficial, and treatment notes indicate bipolar disorder was stable in partial remission. (Exhibit 9F/2, 11F/118, 13F/52, 15F/150, 206, 229)[.]

(A.R. 36, 37).

The ALJ's reliance on the lack of supporting medical evidence, as one reason, to discount Plaintiff's subjective symptom testimony was proper. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

Moreover, the ALJ properly relied on evidence inconsistent with disability—such as her normal examination findings and beneficial treatment—to discount Plaintiff's subjective complaints that she was disabled.

> While the claimant had intermittent findings of depressive thoughts, depressed mood, ruminations, tearfulness, constricted affect, worried mood, rapid or pressured speech and restlessness, her overall, general clinical findings support the residual functional capacity, including unremarkable motor activity, good eye contact, cooperative attitude, unremarkable behavior, normal mood, logical, goal-directed thought process, unremarkable thought content, normal concentration, average intelligence, intact memory and normal attention. (Exhibit 5F/8-63, 6F/21-55, 10F/4, 19, 11F/15-41, 77-117, 26-33, 12F/6, 10, 40-52, 13F/112-159, 15F, 16F)[.]
>
> . . . .
>
> The claimant reported psychiatric medications were beneficial, and treatment notes indicate bipolar disorder was stable in partial remission. (Exhibit 9F/2, 11F/118, 13F/52, 15F/150, 206, 229)

(A.R. 37); *see Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

The ALJ also properly relied on Plaintiff's ability to engage in certain daily activities to find that she was not disabled. *See Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by statute* ("Even where [daily] activities suggest some

difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Lastly, while Plaintiff argues that other evidence could support a different conclusion as to degree of her mental impairments and the weight given to her subjective testimony, this at most amounts to another "rational interpretation," meaning that "the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (per curiam); *see Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (stating that the Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ"). Notably, the Court has reviewed the records cited by the parties and agrees with the ALJ—who noted both negative and positive findings in the record— that Plaintiff's "overall, general clinical findings" supported a finding of not disabled. (A.R. 37).

For the reasons given above, the Court recommends finding that the ALJ provided legally sufficient reasons to reject Plaintiff's subjective complaints.

## II.     CONCLUSION AND RECOMMENDATIONS

Accordingly, IT IS RECOMMENDED that:

1.  The decision of the Commissioner of the Social Security Administration be affirmed.
2.  The Clerk of Court be directed to enter judgment in favor of Defendant and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\

\\\

\\\

The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 18, 2026**

/s/ *Eric P. Grosjean*

UNITED STATES MAGISTRATE JUDGE